## LEVINDALE LEAD & ZINC MINING CO. *et al.* v. COLEMAN.

No. 2626.  Opinion Filed May 12, 1914.

Released for Publication May 26, 1914

(140 Pac. 607.)

**INDIANS—Allotments—Restrictions on Alienation.**  C., a white man, married Mary C., a full-blood member of the Osage Tribe of Indians, of which marriage one child, a son, was born on the 27th of February, 1906.  The son died a few hours after his birth, and the wife died the following. day, both intestate. C. inherited from both decedents certain lands, which were allotted to them under the act of Congress of June 28, 1906 (34 St. 539, c. 3572), which lands he afterwards conveyed to the L. L. & Z. M. Co., a corporation.  Neither C., his wife, nor son had ever procured certificates of competency.  **Held,** that the restrictions upon alienation imposed by the above act attach to and run with the land, and the inability to convey disqualifies the white heir as well as the immediate Indian allottees.

(Syllabus by the Court.)

*Error from District Court, Osage County;*
*John J. Shea, Judge.*

Action by Charles Coleman against Levindale Lead & Zinc Mining Company and others.  Judgment for plaintiff, and defendants bring error.  Affirmed.

*Geo. B. Denison,* for plaintiffs in error.

*S. H. King* and *P. A. Shinn,* for defendant in error.

KANE, C. J.   This was an action commenced by the defendant in error, plaintiff below, against the plaintiffs in error, defendants below, to cancel and set aside certain deeds, made, executed, and delivered by the plaintiff, purporting to convey to the defendants certain inherited lands in the Osage Nation. After the issues were made up, the court below sustained a motion by the plaintiff for judgment upon the pleadings, and entered judgment accordingly, to reverse which this proceeding in error was commenced.

It seems that the plaintiff, a white man, married one Mary Che-she-walla, a full-blood member of the Osage Tribe of Indians, in January, 1906, of which marriage a son, Joseph, was born. The son lived but a few hours after his birth, and the wife and mother died the following day. The son was enrolled as a member of the tribe, and he and his mother received allotments as such. The plaintiff, who was also an enrolled member of the tribe, inherited the land in controversy from his wife and son. The question is, Were the restrictions upon alienation removed from the lands in controversy at the time the plaintiff executed the deed he now seeks to set aside, neither he, his wife, nor his son having procured certificates of competency? Recently a similar question has been answered in the negative by the United States Circuit Court of Appeals for the Eighth Circuit in the case of *W. H. Aaron* and *M. L. Levin v. United States of America*, 183 Fed. 347. In that case it was held that:

"(1) Lands of full-blood Osage Indian allottees, selected by and allotted to them before their decease, were inalienable by their full-blood heirs in March, 1909, under the act of June 28, 1906 (34 St. at L. 539, 541, 542), where none of them had obtained certificates of competency.

"(2) The homestead lands of such allottees were likewise inalienable by such heirs.

"The fourth paragraph of section 2 of the act provided that the homestead lands of Osage Indian allottees 'shall be inalienable and nontaxable until otherwise provided by act of Congress.' The seventh paragraph of the same section declared that the Secretary might issue to any member of the Osage Tribe a certificate of competency, authorizing him to deed his

lands 'except his homestead, which shall remain inalienable and nontaxable for a period of twenty-five years, or during the life of the allottee.'

"*Held*: (1) Restrictions upon alienation of this character attach to and run with the land and the inability to convey disqualifies the heir as well as the immediate allottee.

"(2) The exception in paragraph 7 does not affect the restrictions upon the alienation and taxation of homesteads of Osage allottees and their heirs who obtain no certificates of competency, but is limited in its effect to the homesteads of those who procure such certificates."

The only difference between the two cases is that in this case the heir, a white man, inherits Indian lands by virtue of his marriage to a member of the Osage Tribe, whilst in the principal case the heir is a full-blood Osage Indian. We are of the opinion that that fact does not make inapplicable the rule above laid down. If restrictions upon alienation of this character attach to and run with the land, and the inability to convey disqualifies the heir, as well as the immediate allottee, a white person whose status as an heir is created by inter-marriage with a full-blood member of the tribe would inherit the land subject to the same restrictions as a full-blood heir. There is no provision of law with which we are familiar—and none has been called to our attention—which relieves such an one from procuring a certificate of competency if he desires to have the restrictions removed in order legally to alienate the lands inherited by him from an Osage Indian ancestor.

The judgment of the court below is therefore affirmed.

All the Justices concur.